IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**BLACKHAWK MINING, LLC,**
**Employer Below, Petitioner**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-163**     (JCN: 2019021787)

**JOSEPH BROWNING,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Blackhawk Mining, LLC appeals the March 24, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Joseph Browning filed a timely response.[1] Petitioner filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Browning a 21% permanent partial disability ("PPD") award, and instead granting a 32% PPD award.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 8, 2019, Mr. Browning suffered a workplace injury when he tripped and fell into a hole while working. On April 9, 2019, Mr. Browning completed an application for workers' compensation benefits and noted that he had injured his right knee, lower back, head/neck, and shoulder. The claim administrator held the claim compensable for strains/sprains of the right shoulder, lumbar, cervical, and right knee by order dated April 17, 2019. According to the Board's order in this claim, the claim administrator eventually added a L3-L4 disc herniation and L4-L5 radiculopathy as compensable conditions in the claim, and authorized a surgical lumbar fusion.

As part of the underlying litigation, several medical records were submitted into evidence. Specifically, records from October of 2015 indicated that Mr. Browning had been diagnosed with an acute lumbar sprain for which he attempted to apply for workers' compensation benefits but was denied because his application was untimely filed. Mr.

---

[1] Petitioner is represented by Sean Harter, Esq. Respondent is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

Browning continued to treat for low back pain in December of 2015 and received an injection. Records from May of 2018 indicated that Mr. Browning sought treatment for low back pain after he fell and twisted his back while weed-eating.

MRI reports issued in October of 2019 (after the compensable injury) revealed that Mr. Browning had cervical spondylosis with mild right foraminal encroachment at C4-C5 and mild bilateral foraminal encroachment at C5-C6. A lumbar MRI revealed degenerative disc and joint disease at the lower three lumbar levels, a right paracentral and lateral disc herniation at L3-L4 causing significant right foraminal encroachment and direct impingement upon the exiting nerve root sheath, a disc bulge at L4-L5 with mild facet arthropathy and mild bilateral inferior foraminal encroachment, and a central disc protrusion at L5-S1 without foraminal encroachment. Also submitted during litigation were two Age of Injury reports authored by Kenneth Fortgang, M.D. Dr. Fortgang opined that all of Mr. Browning's lumbar MRI findings were chronic in nature.

When the time came to assess Mr. Browning for PPD, he was evaluated by five physicians. Syam Stoll, M.D., conducted an independent medical evaluation ("IME") of Mr. Browning and assessed 9% whole person impairment for the cervical spine, which he adjusted to 8% per West Virginia Code of State Rules § 85-20 Table D. Dr. Stoll apportioned 4% of the cervical impairment to Mr. Browning's preexisting degenerative condition as shown on imaging studies. Dr. Stoll assessed 3% whole person impairment for Mr. Browning's right shoulder and apportioned 1% to preexisting conditions. Dr. Stoll found no ratable impairment for the right knee. Because Dr. Stoll opined that Mr. Browning had not yet reached maximum medical improvement ("MMI") for the compensable lumbar spine injuries, he withheld his rating at that time. In August of 2020, Dr. Stoll found that Mr. Browning was at MMI for the lumbar spine injuries and assessed 20% whole person impairment after applying West Virginia Code of State Rules § 85-20 Table C. Dr. Stoll then apportioned 8% impairment to Mr. Browning's preexisting conditions, which left 12% attributable to the compensable injury. Dr. Stoll also assessed 4% whole person impairment for surgical scars. In all, Dr. Stoll recommended a total of 21% whole person impairment. On October 26, 2020, the claim administrator granted Mr. Browning a 21% PPD award in accordance with Dr. Stoll's recommendation. Mr. Browning filed a protest of this order with the Board.

On July 20, 2021, Bruce Guberman, M.D., performed an IME of Mr. Browning. For the cervical spine, Dr. Guberman assessed 8% whole person impairment per West Virginia Code of State Rules § 85-20 Table E. Dr. Guberman did not apportion for any preexisting impairment as he opined that all of Mr. Browning's cervical impairment was attributable to the compensable injury. Dr. Guberman assessed 3% whole person impairment for Mr. Browning's right shoulder and 2% whole person impairment for his right knee. Regarding the lumbar spine, Dr. Guberman assessed 23% whole person impairment per West Virginia Code of State Rules § 85-20 Table C. In sum, Dr. Guberman recommended a combined total of 32% whole person impairment.

On September 21, 2021, Robert Walker, M.D., performed an IME of Mr. Browning. For the cervical spine, Dr. Walker assessed 8% whole person impairment per West Virginia Code of State Rules § 85-20 Table E. Dr. Walker apportioned 2% of the impairment to preexisting conditions, which he based upon imaging studies, and attributed the remaining 6% to the compensable injury. Dr. Walker assessed 6% whole person impairment for the right shoulder and 4% whole person impairment for the right knee based on range of motion. Regarding the lumbar spine, Dr. Walker assessed 21% whole person impairment per West Virginia Code of State Rules § 85-20 Table C. Further, Dr. Walker found no basis for apportionment and attributed the entire 21% impairment to the compensable injury. Dr. Walker's total recommendation was 33% whole person impairment.

On March 30, 2022, Prasadarao Mukkamala, M.D., performed an IME of Mr. Browning. For the cervical spine, Dr. Mukkamala assessed 8% whole person impairment per West Virginia Code of State Rules § 85-20 Table E. Dr. Mukkamala apportioned 4% to preexisting conditions and attributed 4% to the compensable injury. Dr. Mukkamala found no ratable impairment for the right shoulder and 2% impairment for the right knee. Regarding the lumbar spine, Dr. Mukkamala assessed 22% whole person impairment per West Virginia Code of State Rules § 85-20 Table C. Dr. Mukkamala apportioned 14% impairment to preexisting conditions, leaving 8% impairment attributable to the compensable injury. The combined total impairment recommended by Dr. Mukkamala was 14% whole person impairment.

Lastly, on September 27, 2022, David Soulsby, M.D., performed an IME of Mr. Browning. For the cervical spine, Dr. Soulsby assessed 8% whole person impairment per West Virginia Code of State Rules § 85-20 Table E. Dr. Soulsby apportioned 4% to preexisting conditions and attributed 4% to the compensable injury. Dr. Soulsby assessed 7% whole person impairment for the right shoulder and no impairment for the right knee. Regarding the lumbar spine, Dr. Soulsby assessed 23% whole person impairment per West Virginia Code of State Rules § 85-20 Table C. Dr. Soulsby apportioned 12% impairment to preexisting conditions, leaving 11% impairment attributable to the compensable injury. In sum, Dr. Soulsby recommended a combined total of 21% whole person impairment.

By order dated March 24, 2023, the Board reversed the claim administrator's order, which granted Mr. Browning a 21% PPD award in accordance with Dr. Stoll's recommendation, and granted Mr. Browning a 32% PPD award in accordance with Dr. Guberman's recommendation. The Board found that all of the other evaluator's reports were unpersuasive because they improperly apportioned for preexisting cervical impairment based solely on imaging evidence. The Board cited our Supreme Court's prior holding that imaging evidence of degenerative changes alone is not sufficient to allow apportionment. *See Galaxy Distrib. of W. Va., Inc. v. Spangler*, No. 19-0803, 2020 WL 6559079 (W. Va. Nov. 6, 2020) (memorandum decision); *Minor v. W. Va. Div. of Motor Vehicles*, No. 17-0077, 2017 WL 6503113 (W. Va. Mar. 23, 2022) (memorandum decision). Conversely, the Board noted, our Supreme Court has upheld apportionment

where preexisting conditions were symptomatic prior to the compensable injury. *See Shepherd v. Cornerstone Interiors*, No. 21-0407, 2022 WL 4299586 (W. Va. Sept. 19, 2022) (memorandum decision); *Epling v. Chancellor Health Partners, Inc.*, No. 20-0941, 2022 WL 855689 (W. Va. March 23, 2022) (memorandum decision).

The Board also cited this Court's holding in *Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 882 S.E.2d 916 (Ct. App. 2022), noting that this Court set forth factors that may be valuable in determining whether apportionment is proper in a claim. The Board stated that this Court had indicated that diagnostic tests and range of motion studies may be helpful; however, in Mr. Browning's case, there were only imaging studies performed after the compensable injury. The Board further stated that this Court also noted that medical records could provide important information concerning a history of prior complaints and whether the preexisting condition interfered with a claimant's work or activities of daily living. In Mr. Browning's case, the Board noted that no medical evidence of any treatment, symptoms, or cervical diagnoses prior to the compensable injury had been submitted into the Board's record. As such, the Board concluded that Drs. Walker, Mukkamala, and Soulsby's decisions to apportion for preexisting cervical issues were not supported by the evidence of record.

The Board also disregarded the reports of Drs. Walker and Soulsby because Dr. Soulsby was the only evaluator of record to find no ratable impairment for the right knee[2] and because Dr. Walker was the only evaluator of record who found range of motion abnormalities in the right knee. Further, the Board noted that Dr. Mukkamala was the only evaluator of record to find no ratable impairment for the compensable right shoulder injury; his findings were erroneously based on the belief that lumbar sprain was the only compensable low back injury when instead a L3-L4 disc herniation and L4-L5 radiculopathy had been added to the claim; and his findings were erroneously based on the opinion that the surgical fusion was necessitated by a non-compensable condition when an administrative law judge had previously found the fusion was medically necessary and reasonably related to the compensable diagnoses.

The Board found that, in contrast, Dr. Guberman's report was properly conducted in accordance with the *Guides* and West Virginia Code of State Rules § 85-20 and that his opinions were consistent with the evidence of record and the holdings set forth by this Court and our Supreme Court. While the employer argued that Dr. Guberman's report was unreliable because he did not apportion for preexisting lumbar conditions, the Board found that Dr. Guberman's decision "to attribute all the claimant's lumbar impairment to the compensable injury is consistent with the weight of the medical evidence and is firmly in line with the Supreme Court's decisions regarding apportionment and the ICA's analysis

---

[2] Dr. Stoll also found no ratable impairment of the right knee; however, this oversight by the Board does not affect its decision given the other reasons provided as to why Dr. Soulsby's report was not persuasive.

in *Duff*." Specifically, the Board noted that although medical records show that Mr. Browning sought treatment for low back pain in October and December of 2015, it was the result of a lumbar sprain injury that occurred at work. Further, Mr. Browning's complaints from May of 2018 resulted from a twisting injury while weed-eating. The Board concluded that these were soft tissue injuries, that none of evaluators apportioned for prior back sprain/strain and related soft tissue injuries, and there was otherwise no evidence that Mr. Browning's degenerative conditions were symptomatic prior to the compensable injury or interfered with his work or activities of daily living. Therefore, the Board reversed the claim administrator's order and granted Mr. Browning a 32% PPD award in accordance with Dr. Guberman's recommendation. By order dated May 12, 2023, this Court refused Blackhawk Mining's motion for stay. Blackhawk Mining now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Blackhawk Mining argues that the Board erred in reversing the claim administrator's order and granting a higher PPD award when it failed to cite to West Virginia Code § 23-4-9b (2003), regarding apportionment of definitely ascertainable preexisting impairments. According to Blackhawk Mining, Mr. Browning's medical records, radiographic evidence, age of injury reports, and IMEs performed by four physicians indicate that Mr. Browning had a definitely ascertainable impairment to his spine which predated the compensable injury and, as such, should have been apportioned out of his PPD award. Blackhawk Mining points to medical records indicating that Mr. Browning experienced lower-back pain from March of 2015 through December of 2015 in support and notes that Mr. Browning lied in interrogatories regarding his prior injuries,

5

which the Board "inexplicably glossed over." Blackhawk Mining asserts that Drs. Stoll, Mukkamala, and Soulsby all properly apportioned for Mr. Browning's preexisting degenerative disease, and the Board erred in relying on Dr. Guberman's report which was unreliable and excessive due to his failure to apportion for preexisting degenerative disease.

Upon our review, we find that Blackhawk Mining failed to demonstrate that the Board's findings and conclusions were clearly wrong. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 2, *Stewart v. W. Va. Bd. of Exam'rs for Registered Pro. Nurses*, 197 W. Va. 386, 475 S.E.2d 478 (1996) (citations omitted). With this high standard in mind, we are unable to conclude that the Board erred in awarding Mr. Browning a PPD award in accordance with Dr. Guberman's recommendation.

As we noted in *Duff*, West Virginia Code § 23-4-9b (2003) requires, in part, that:

Where an employee has a **definitely ascertainable impairment** resulting from an occupational or a nonoccupational injury, disease, or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one [§ 23-3-1], article three of this chapter, **the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation** allowed by reason of the subsequent injury.

247 W. Va. at 556, 882 S.E.2d at 922. In *Duff*, we explained that "'definitely ascertainable' and 'definitely ascertained' refer to the existence of a preexisting condition, and not to the precise degree of impairment to be apportioned." *Id.* Accordingly, after determining whether a "definitely ascertainable impairment" exists, the Board must then determine the degree of impairment to be apportioned. West Virginia Code § 23-4-9b provides that "[t]he degree of the preexisting impairment may be established at any time by competent medical or other evidence."

While the Board did not explicitly address West Virginia Code § 23-4-9b, it did address our holdings in *Duff* and made sufficient findings such that we are convinced that the same result would have been reached had it specifically addressed the appropriate statute. Here, the Board found that apportionment for Mr. Browning's cervical spine was not appropriate, as there was no medical evidence of record indicating that Mr. Browning was symptomatic due to his preexisting degenerative conditions or that he sought treatment for those conditions prior to the compensable injury. The Board noted that, instead, there were only imaging studies performed after the compensable injury occurred, which

6

revealed the preexisting conditions. As noted in *Duff*, the Supreme Court of Appeals of West Virginia has previously recognized that imaging studies (which demonstrated preexisting or degenerative conditions) alone were insufficient to warrant apportionment. 247 W. Va. at 558, 882 S.E.2d at 924. However, apportionment has been upheld "where preexisting conditions were symptomatic prior to the compensable injury." *Id.* Given these considerations by the Board, we cannot find that it was clearly wrong in determining that apportionment was not appropriate for Mr. Browning's cervical spine, given that there was no evidence of symptoms or treatment in his cervical spine prior to the compensable injury.

Likewise, we find no error in the Board's determination that apportionment for Mr. Browning's preexisting conditions in his lumbar spine was not appropriate. While Blackhawk Mining argues that Mr. Browning lied in his interrogatories and Dr. Guberman's IME regarding his prior strains and related treatment, we note that none of the evaluators, including those chosen by Blackhawk Mining, apportioned for Mr. Browning's prior sprains/strains. Rather, they apportioned for his preexisting degenerative conditions based on imaging studies, and there is no indication that Mr. Browning's acute soft tissue injuries did not fully resolve. Again, given that there is no evidence demonstrating that Mr. Browning was symptomatic or sought treatment for any preexisting lumbar conditions, we find no error in the Board's decision that apportionment was not necessary.

As such, the Board was not clearly wrong in disregarding the recommendations of Drs. Mukkamala, Walker, Stoll, and Soulsby, all of whom apportioned for Mr. Browning's preexisting, but asymptomatic, degenerative cervical spine condition. The Board, having found problems with the reports of these evaluators, was left with the report of Dr. Guberman. In reviewing Dr. Guberman's report, the Board noted that he properly refrained from apportioning impairment for preexisting, asymptomatic cervical and lumbar spine conditions, and that his medical findings were consistent with the medical evidence. Given the Board's thorough analysis of this Court's holdings in *Duff* regarding the apportionment of preexisting, definitely ascertainable conditions, we cannot find that it erred in awarding a PPD award in accordance with Dr. Guberman's recommendation upon finding that he appropriately refrained from apportioning impairment for Mr. Browning's asymptomatic preexisting conditions.

Accordingly, we affirm the Board's March 24, 2023, order.

Affirmed.

**ISSUED:** September 5, 2023

7

**CONCURRED IN BY:**
Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

8